Per curiam.
This is an application for a writ of habeas corpus filed pursuant to Texas Code of Criminal Procedure article 11.071.[1] In this opinion, we consider the preliminary issue of the judicial authority of the judge who presided over habeas proceedings in this case. The judge at issue signed an order voluntarily recusing himself from presiding over applicant's habeas proceedings. He then sought and obtained the appointment of a replacement judge, but subsequently signed an order purporting to restore his own judicial authority to preside over the case. For the reasons explained below, we hold that the judge did not have authority to take any further action after signing the voluntary recusal order. We therefore restore this matter to its position immediately following the replacement judge's assignment to the case and remand it to the trial court for further proceedings.
BACKGROUND
In May 2010, a jury found applicant guilty of the offense of capital murder. The jury answered the special issues submitted pursuant to Article 37.071, and the trial court, accordingly, set applicant's punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. Thuesen v. State , No. AP-76,375, 2014 WL 792038 (Tex. Crim. App. Feb. 26, 2014) (not designated for publication). Applicant filed his initial application for a writ of habeas corpus in the trial court on October 10, 2012, raising twenty-two claims for relief, including allegations that his trial attorneys were constitutionally ineffective. On April 26, 2013, Judge Travis Bryan signed an order designating issues specifying that applicant's claims one through nineteen involved factual issues that required resolution. Judge Bryan ordered that an evidentiary hearing be conducted. He subsequently scheduled the evidentiary hearing to commence on December 10, 2013.
However, on November 18, 2013, Judge Bryan signed a written order, stating "[t]he undersigned judge recuses himself from the writ hearings in this case only (and not for the retrial of the underlying criminal case)." Judge Bryan gave no reason for the recusal in his order. But, "in accordance with Rule [of Civil Procedure] 18a," he requested that the Presiding Judge of the Second Administrative Judicial Region, the Honorable Olen Underwood, appoint another judge to preside over applicant's case.
Applicant's habeas counsel sent an email to Judge Bryan regarding the recusal order, stating that counsel would "like to avoid the Court recusing itself from the case, if possible, because of the Court's *148 deep knowledge and prior experience." Judge Bryan responded via email, stating that he was recusing himself because he had donated $1,000 to the judicial campaign of applicant's trial attorney, Michele Esparza. He further stated that Esparza had worked for him for six years and that he had tried several high profile cases with applicant's other trial attorney, Billy Carter. Judge Bryan indicated via email that he would "reconsider" his recusal "if BOTH sides request." Applicant's counsel replied that they had consulted with applicant and he agreed with their request for Judge Bryan to reconsider his recusal. The State responded that Judge Bryan should proceed with the voluntary recusal. Judge Bryan's court coordinator then notified the parties on the same day that the judge was going forward with the recusal.
On November 20, 2013, Judge Underwood's assistant sent a letter from Judge Underwood's office to Senior Judge H. R. Towslee. The letter transmitted "assignment # 24920," which was an order assigning Judge Towslee "to hear Cause No. 09-02136-CRF-272-A; State of Texas vs. John Darrell Thuesen and to dispose of any other business requested by the court." In the accompanying order, which was signed on November 18, 2013, Judge Underwood assigned Judge Towslee to preside over the 272nd District Court starting on December 10, 2013, "for the primary purpose of hearing cases and disposing of any accumulated business requested by the court." The order provided that Judge Towslee's "assignment shall continue as may be necessary for the assigned Judge to dispose of any accumulated business and to complete trial of any case or cases begun during this assignment ... or until terminated by the Presiding Judge." Judge Towslee signed an order on November 22, 2013, rescheduling the evidentiary hearing in this case.
On March 13, 2014, applicant filed a motion to "Reassign Original Trial Court Judge," asserting that Judge Bryan's conflict of interest leading to the recusal had "been resolved" because Esparza had been defeated in the primary election. Although applicant attached a proposed order for Judge Underwood's signature, the record shows that the order remained unsigned. The next day, Judge Bryan sent an email from his personal email address to the 272nd District Court coordinator regarding applicant's case, stating:
Judge Underwood called this morning and advised me that if I am willing, since I originally recused myself, I can now enter an order withdrawing my own recusal order. This would put me back on the capital writ hearing. I told him I would do this on Monday. The reason I will is because my original recusal reason, [Esparza's] campaign and my donation to her, is now moot. He said it will then fall on either of the parties to object to my presence in the case. He believes this is the proper procedure. If anyone objects, Judge Underwood or his designee will then hear the involuntary recusal motion.
By copy of this email, you may notify both sides and Judge Towslee of my intent. Please copy Judge Underwood also to confirm my conversation with him. I will enter the order on Monday. Travis Bryan III.
Judge Bryan's court coordinator forwarded Judge Bryan's message to email addresses corresponding to counsel for both sides, Judge Towslee, and Judge Underwood. The prosecutor responded on March 17 with the following objection: "The State must respectfully object due to potential claims on this issue being raised post state writ."
On the same day, Judge Bryan's court coordinator arranged a "phone conference *149 hearing on the Motion (to withdraw the recusal) and the State's objection." Judge Bryan presided over the telephonic hearing regarding his own reinstatement, and counsel for the State and for applicant participated in the hearing. The record reflects that applicant, Judge Underwood, and Judge Towslee did not participate. During the telephonic hearing, Judge Bryan stated that Judge Underwood had told him in a telephone conversation that, even though Judge Towslee was the judge assigned to the case, Judge Bryan could enter an order that day.
The prosecutor explained the State's objections to Judge Bryan's intended reinstatement. Specifically, the fact that Esparza lost the primary did not change the State's concern about the "perception of bias" and "appearance of impropriety," which necessitated Judge Bryan's voluntary recusal. The prosecutor expressed concern that these issues could lead to future claims of ineffective assistance of counsel or judicial bias in applicant's federal writ. Applicant's counsel countered that, because the primary was over and Esparza was no longer campaigning, there were "just no grounds for a public appearance of impropriety." Counsel asserted that Judge Bryan's presiding over the case could not possibly give rise to any cognizable claim in federal court.
Judge Bryan stated at the hearing that he felt that he could be "100 percent fair in spite of [Esparza's] presence in the campaign and [his] donation to her." He concluded, "So the reason being gone as to why I would recuse myself in the first place, I do now withdraw my recusal. I overrule the State's objection. And according to Judge Underwood [I] am now back on this case." Judge Bryan did not address any other ground for his recusal, other than his campaign contribution to Esparza. He instructed the State's attorneys that they would have to file a motion for involuntary recusal to object to his reinstatement.
The next day, March 18, 2014, Judge Bryan signed a written order stating:
On March 17, 2014, I withdraw my order of voluntary recusal. The reason for the original recusal is now moot. The State has objected to this action. I overrule the State's objection. The Texas Office of Capital Writs has advised that they have no objection to this Order, which will reinstate me as the Judge of the case. The State still has a remedy which is to seek an involuntary recusal of me.
The order specified that a copy would be provided to Judge Underwood.
On the same day, the prosecutor sent an email to Judge Bryan's court coordinator and applicant's counsel, copying Judge Underwood and Judge Towslee, stating:
Judge Bryan,
The State of Texas no longer has any objections relating to you presiding over the John Thuesen writ. Based on further research and contact with a number of experts in the area of federal writs, the statements and assurances made by the Office of Capital Writs in the telephone hearing yesterday, March 17, 2014, are sufficient to alleviate our concerns about their motives for having you preside. With those issues resolved, our original desire to have you preside can now be realized without any apprehension of future legal ramifications.
Judge Bryan subsequently presided over a five-day evidentiary hearing on June 9 through 13, 2014, in which Esparza, Carter, and other witnesses testified. On July 17, 2015, Judge Bryan entered an order adopting findings of fact and conclusions of law. His findings and conclusions appear to be a copy of applicant's proposed findings of fact and conclusions of law *150 containing Judge Bryan's hand-written amendments. In these findings and conclusions, Judge Bryan recommended that this Court grant relief to applicant on some of applicant's claims, but only as to the punishment phase of his trial.
On February 24, 2016, after reviewing the record in applicant's case, we entered an order filing and setting the case. We directed the parties to brief three questions regarding Judge Bryan's voluntary recusal and his authority, if any, to reinstate himself as the judge presiding over the instant habeas case.[2] The parties have now filed responsive briefs addressing the three questions we posed.[3] Applicant essentially argues that Judge Bryan merely "effected his reinstatement in response to Judge Underwood's directives." Applicant contends that no legal authority required Judge Underwood to memorialize his "directives" in a written order, and Judge Bryan's email discussing his telephone conversation with Judge Underwood was "sufficient" to memorialize Judge Underwood's "directives." Applicant additionally argues in a reply brief that the State "ultimately sanctioned" the reinstatement of Judge Bryan by retracting its objection.
The State argues that Texas law provides that, after a judge voluntarily recuses himself, he can take no further action. Thus, in the absence of any subsequent written order signed by Judge Underwood, Judge Bryan did not have judicial authority to sign and execute the order reinstating himself on applicant's case, and his subsequent rulings are void.
On September 21, 2016, we ordered Judge Underwood to review the filings, records, and transcripts of the proceedings in this habeas case to search for any record of an order that he may have rendered removing Judge Towslee and reinstating Judge Bryan, if any such order exists. Judge Underwood responded:
I have made a thorough review of the pleadings, filings, records, and transcripts of the proceedings in this Habeas case. I have not found any Order removing Senior Judge H.R. Towslee and reinstating Judge Travis Bryan III, as no such order ever existed. Judge Bryan's original request of me was an assignment request to have a judge appointed *151 in the 272nd Judicial District Court of Brazos County, Texas. I entered such an Order on November 18, 2013, thereby assigning Senior Judge Towslee. There was never a formal Motion to Recuse Judge Bryan filed by any party to the Habeas matter now pending in the 272nd Judicial District Court. As there was no formal Motion to Recuse Judge Bryan, I had no need to issue an Order reinstating him on this Habeas matter. My Order appointing Judge Towslee has never been subject to rescission and still exists.
ANALYSIS
The circumstances presented in this case focus our attention on an area of criminal practice which would benefit from further explanation. The manner in which our judicial system handles the recusal of judges affects public confidence in the judiciary, as it goes to the "very heart of the promise of impartiality." See Johnson v. Pumjani , 56 S.W.3d 670, 672 (Tex. App.-Houston [14th Dist.] 2001, no pet.). Our Code of Criminal Procedure contains no procedures governing the recusal of trial judges.[4] Consequently, this Court has looked to the Texas Rules of Civil Procedure for guidance concerning the recusal of trial judges in criminal cases and habeas corpus proceedings. See TEX. R. CIV. P. 18a, 18b ;[5] Ex parte Sinegar , 324 S.W.3d 578, 581 (Tex. Crim. App. 2010) (holding that Rule 18a"applies in habeas proceedings that occur before the trial court"); Arnold v. State , 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (stating that Rule 18a"applies to criminal cases absent 'any explicit or implicit legislative intent indicating otherwise' ").
Rule 18a sets out the procedures to be followed when a party moves to recuse a trial judge. Rule 18b provides that a judge "must recuse" in any proceeding in which:
(1) the judge's impartiality might reasonably be questioned;
(2) the judge has a personal bias or prejudice concerning the subject matter or a party; ...
(4) the judge or a lawyer with whom the judge previously practiced law has been a material witness concerning the proceeding[.]
Rule 18b(b)(1), (2), (4). Rule 18b's recusal language "is imperative and mandatory, not permissive or discretionary." Rogers v. Bradley , 909 S.W.2d 872, 873 (Tex. 1995). The mere existence of a ground for recusal of a judge does not in itself void or nullify subsequent proceedings before that judge; the ground can be waived if not raised by proper motion. In re Union Pacific Resources Co. , 969 S.W.2d 427, 428 (Tex. 1998) (orig. proceeding).
But Rules 18a and 18b do not set out a procedure for the specific scenario presented in this case, i.e., when a trial judge voluntarily, sua sponte signs an order recusing himself. This Court has not previously confronted this set of circumstances in a published opinion. However, the Dallas Court of Appeals has held that Rule 18b authorizes judges to voluntarily recuse themselves "in proceedings in which their partiality might reasonably be questioned." Dunn v. County of Dallas , 794 S.W.2d 560, 562 (Tex. App.-Dallas 1990, no writ) ("This rule authorizes a voluntary recusal but does not speak specifically of the procedural *152 steps to be utilized."); see also Rule 18b(b)(1). The Dallas court concluded that a "fair reading of rules 18a and 18b suggests that[,] in the event a judge should elect to recuse himself ..., two things are required: (1) an order of recusal, and (2) a request to the administrative judge of the district to assign another judge to sit." Dunn , 794 S.W.2d at 562. The Dallas court also held that, "[e]xcept for good cause stated in the order in which any further action is taken," the judge who recused himself "can make no further orders." Id. ; see also In re Amos , 397 S.W.3d 309, 314 (Tex. App.-Dallas 2013, no pet.) ("Once a judge has been recused, the prudent approach is for the recused judge and the assigned judge to have no further communications with each other concerning any aspect of that case.").
Further, twenty years after the Dallas court decided Dunn , the Texas Legislature passed Section 24.002 of the Texas Government Code providing the procedure that must be followed when a district judge voluntarily recuses himself:
If a district judge determines on the judge's own motion that the judge should not sit in a case pending in the judge's court because the judge is disqualified or otherwise should recuse himself or herself, the judge shall enter a recusal order, request the presiding judge of that administrative judicial region to assign another judge to sit, and take no further action in the case except for good cause stated in the order in which the action is taken. A change of venue is not necessary because of the disqualification of a district judge in a case or proceeding pending in the judge's court.
TEX. GOV'T CODE § 24.002. Thus, if a district judge decides sua sponte that he "should" recuse himself for some reason, the judge "shall" take the following steps:
(1) enter a recusal order;
(2) request that the presiding judge appoint another judge to sit in the case at issue; and
(3) take no further action and make no further orders in the case unless the "the order in which the action is taken" contains a statement of "good cause."
Further, Rule 18a additionally provides that, when a recusal is granted, the presiding judge of the administrative judicial region "must transfer the case to another court or assign another judge to the case." Rule 18a(g)(7). The granting of a recusal is final and is not an appealable order. See Rule 18a(j).
The plain language of Section 24.002 does not define any condition that would reverse a district judge's discharge from the case once a recusal order has been signed. In other words, once a district judge signs an order recusing himself or herself under the statute, the recused judge no longer has any judicial authority to take any action or sign any orders in the case. The statute provides only one exception: the recused judge may sign an order in the case if that order contains within it a statement of "good cause."
Chapter 24 of the Government Code does not define the phrase "good cause." However, the Code Construction Act (Chapter 311 of the Government Code) applies to the construction of Section 24.002. See TEX. GOV'T CODE § 1.002. That Act provides in relevant part that words and phrases "shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE § 311.011(a). The Legislature employed the phrase "good cause" in Section 24.002 specifically in reference to the phrase, "take no further action in the case." We have held that "[g]ood cause 'generally means a substantial reason amounting in *153 law to a legal excuse for failing to perform an act required by law.' " Ex parte Martin , 6 S.W.3d 524, 526 (Tex. Crim. App. 1999) (citing Black's Law Dictionary 692 (6th ed. 1990)).
In the context of the language of Section 24.002, "good cause" therefore means "a substantial reason amounting in law to a legal excuse for failing to" comply with the statute's requirement to "take no further action in the case." See ids="11646040" index="11" url="https://cite.case.law/sw3d/6/524/#p526">id. In other words, a statement of "good cause" under Section 24.002 must articulate a "substantial reason" that justifies a recused trial judge taking some action in the case, even though the statute prohibits him from doing so. Such "good cause" does not relate to the merits of the underlying action. Rather, an adequate statement of "good cause" in the context of Section 24.002 must articulate the nature of the exigency that necessitates that the recused judge, in lieu of the judge with actual judicial authority over the case, render the particular order at issue.
In the instant case, Judge Bryan initially complied with the dictates of Section 24.002. After becoming aware that grounds for recusal existed,[6] Judge Bryan signed an order of recusal and referred the case to Judge Underwood for the assignment of another judge to sit in the case, and Judge Underwood made the requested assignment. However, Judge Bryan deviated from prescribed procedures after applicant filed a motion asking Judge Underwood to reinstate him. At that point, Judge Bryan presided over a telephonic hearing and then signed an order purporting to reinstate himself as the judge on the case (and thereby impliedly ending Judge Towslee's assignment).
But under Section 24.002, Judge Bryan did not have judicial authority to conduct the hearing or sign an order in applicant's habeas case absent "good cause" stated within "the order in which the action is taken." TEX. GOV'T CODE § 24.002. And Judge Bryan's reinstatement order does not include the words "good cause." Judge Bryan's statement in the order that "[t]he reason for the original recusal is now moot" suggests that he reasoned that Esparza's loss in the primary election rendered "moot" any allegation of bias regarding his financial contribution to her campaign and negated any ground necessitating his recusal. However, Esparza's loss in the primary election does not relate to any exigency that necessitated Judge Bryan signing an order in the habeas case, rather than Judge Towslee, who had judicial authority over the case at the time.[7]
Additionally, Rule 18a authorizes a regional presiding judge or a judge assigned to decide a recusal motion to "issue interim or ancillary orders in the pending case as *154 justice may require." Rule 18a(g)(4).[8] Applicant argues that this ancillary orders provision, and the language in Judge Underwood's order assigning Judge Towslee,[9] authorized Judge Underwood to rescind Judge Towslee's assignment and order Judge Bryan to "reassume responsibility" over applicant's habeas case. Applicant further argues that Judge Underwood rendered this ruling authorizing Judge Bryan to "effect[ ] his reinstatement" through oral "directives" communicated to Judge Bryan via a private telephone conversation. Applicant contends that these oral "directives" did not need to be "memorialized in a written order."
However, Rule 18a, entitled "Recusal and Disqualification of Judges," provides that a ruling of the regional presiding judge must be made in writing : "The ruling must be by written order." Rule 18a(g)(2). Applicant avers that this written order requirement only applies to a presiding judge's ruling on an initial motion to recuse or disqualify a judge and not to any ancillary orders in the matter. Yet Rule 18a's written order requirement does not explicitly limit its applicability to rulings on motions to recuse or disqualify. Id. The ancillary orders provision and the written order requirement are both located within the same subsection, which is broadly entitled "Duties of Regional Presiding Judge." Viewed in context, the written order requirement applies to all rulings by a regional presiding judge related to the recusal or disqualification of a judge. See TEX. GOV'T CODE §§ 311.011(a) and 311.002(4) (providing that the Code Construction Act applies to "each rule adopted under a code").
Further, the same rationale that supports a requirement that orders deciding initial motions to recuse be made in writing also supports a requirement that ancillary orders in recusal matters be made in writing. Both types of orders pertain to the question of a trial judge's authority to preside over a case, and both types of orders frequently deal with factual questions for which a just resolution is pivotal to maintaining public confidence in our judiciary.
In this case, Judge Bryan stated that Judge Underwood made a remark in an off-the-record telephone conversation. The remark was memorialized in Judge Bryan's later statements about the conversation. Applicant essentially asks us to find that this constitutes the rendition of an order by Judge Underwood. However, we have held that a judge " 'renders' a judgment or order when, orally in open court or by written memorandum signed by him and delivered to the clerk, the judge pronounces, states or declares a decision of the law upon [a] given state of facts." Westbrook v. State , 753 S.W.2d 158, 159 n.1, 160 (Tex. Crim. App. 1988) (adopting opinion of Clinton, J., concurring in the same case).
Judge Underwood did not pronounce, state, or declare any decision regarding *155 the reinstatement of Judge Bryan "orally in open court or by written memorandum signed by him and delivered to the clerk." See ids="9969540" index="14" url="https://cite.case.law/sw2d/753/158/">id. ; see also State v. Sanavongxay , 407 S.W.3d 252, 258 (Tex. Crim. App. 2012) ("The problem with oral rulings is that there may be, and often is, disagreement as to what was said and what the ruling was.... without 'an order,' we have no evidence of the required finality of a ruling; an oral ruling is subject to change after further discussion or presentation of contrary law or precedent."). The circumstances presented here do not establish the rendition of an order by Judge Underwood regarding the reinstatement of Judge Bryan.
Even if we were to assume that a judge could render such a ruling through statements he makes in an off-the-record telephone conversation, we have held that a judge's order must be entered of record in the records of the court that rendered the ruling. "Once rendered, a decision must be 'entered' of record; that is, it will be 'spread upon the record' of the court by the clerk." Westbrook , 753 S.W.2d at 159 n.1, 160. Judge Underwood has informed us that he thoroughly reviewed the pleadings, filings, records, and transcripts of these proceedings in his court and located no record of an order directing Judge Bryan to reassume judicial authority over this case and no order rescinding Judge Towslee's authority over the case. It appears that no such order was ever entered of record.
Applicant insists that Judge Underwood's "directives" were effective despite the fact that they were not "entered in the minutes of the court." He refers us to Dunn , in which the Dallas Court of Appeals stated:
In general, orders of the court to be effectual must be entered of record. There are, however, many notable exceptions to this general rule. For example, unless there is a time limit placed on the court's jurisdiction to act on a matter, orders may be orally pronounced. Walker v. Harrison , 597 S.W.2d 913, 915 (Tex. 1980). Communications from the court such as notice of setting, pretrial motions, and trial are among the many acts of a court that are conveyed to the parties either orally or by letter. Such letters are generally always found filed among the pleadings and other papers. While not always set out as a formal order and entered in the minutes, they are, nonetheless, an act of the court that is effective and enforceable.... We limit our comments to the analysis of the events of this case. Certainly, logic tells us that, subject to a specific requirement of the rules, any form of communication between the court and the parties for the efficient and expeditious handling of the court's business is acceptable.
Dunn , 794 S.W.2d at 562. In Dunn , the trial judge sent a written, signed letter to the presiding administrative judge and all the attorneys of record, in which he stated that he felt compelled to recuse himself and requested the appointment of a new judge. A copy of the letter was placed among the records in the case but it was not "filed in the minutes of the court." Noting that the trial judge's letter was a "written[,] signed document" and that it complied with requirements in Rule 18a, the court of appeals ultimately held that this letter constituted a valid order of recusal, despite the fact that it was not promptly entered into the minutes of the court by the clerk.
The circumstances of the instant case are distinguishable from those present in Dunn in significant respects. Although the record contains written orders recusing Judge Bryan and assigning Judge Towslee to the case in compliance with the applicable *156 rules, it includes no writing of any kind signed by Judge Underwood reinstating Judge Bryan and discharging Judge Towslee. There is no evidence that Judge Underwood distributed a written communication to the parties reflecting a decision to reinstate Judge Bryan and discharge Judge Towslee. And Judge Underwood made no oral pronouncement in court on the record to this effect. Further, Judge Underwood has now affirmatively stated that his order appointing Judge Towslee has never been rescinded and still exists.
Furthermore, decisions affecting a judge's authority to preside over a case are fundamentally different in character than communications concerning pretrial settings and other routine matters, which may not require the entry of a written order in the minutes of the court. Here, by voluntarily recusing himself, a district judge acknowledged that the public might perceive an appearance of partiality. Under such circumstances, it is particularly important that mandatory procedures governing the vesting and transfer of judicial authority be followed.
Thus, we hold that interim or ancillary orders made by a regional presiding judge regarding the recusal of a trial judge-or the reinstatement or modification of judicial authority following a recusal-must be made in writing, signed by the presiding judge, and entered of record in the case. Oral "directives" communicated off-the-record to another judge will not suffice to establish judicial authority to preside over a case.
In the instant case, having signed the order recusing himself on November 18, 2013, Judge Bryan retained no authority to take any further action in applicant's habeas case absent: (1) a statement of "good cause" in the order in which the action was taken; or (2) a valid, written ancillary order signed by Judge Underwood authorizing Bryan's actions and rescinding Judge Towslee's authority over the case. As neither of these preconditions existed, Judge Bryan had no authority to reinstate himself or take any action in applicant's habeas case after he signed the recusal order. Because Judge Underwood had not signed or executed an order terminating Judge Towslee's assignment, Judge Towslee retained judicial authority over the instant case.
Yet Judge Bryan did take further action in this case. Specifically, Bryan presided over a five-day evidentiary hearing and signed findings of fact and conclusions of law. Also, the State's attorney withdrew the State's objection to Judge Bryan's exercise of authority over the case and participated in the evidentiary hearing. Thus, we must address what impact these facts have on our resolution of this matter.
Normally, as a prerequisite to presenting a complaint for review, the record must show that the party complained to the trial court via a timely request, objection, or motion that stated his grounds "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a) ; see also Lackey v. State , 364 S.W.3d 837, 846 (Tex. Crim. App. 2012) (stating that an objection to the authority of the judicial officer presiding over a proceeding must be timed to afford "notice of the procedural irregularity and an adequate opportunity to take appropriate corrective action"); Lemos v. State , 27 S.W.3d 42, 47 (Tex. App.-San Antonio 2000, pet. ref'd) (holding that counsel's comment, "I withdraw my objection to that" waived any complaint on appeal).
However, because Judge Underwood had not revoked Judge Towslee's assignment, Judge Towslee retained judicial authority *157 over the case at the time Judge Bryan conducted the telephonic hearing to decide the issue of his own reinstatement. Regardless of whether the State articulated or maintained a valid objection, Judge Bryan lacked the judicial authority to preside over the telephonic hearing, overrule the State's objections, and sign the order reinstating himself. Cf. Lackey , 364 S.W.3d at 845 (observing that it was "at least arguable" that, even though the appellant did not object at the hearing, the trial judge "had no authority even to rule that he had no authority").
This Court has long held that it is the "ultimate factfinder" in habeas corpus proceedings and the trial judge is the "original factfinder." See Ex parte Reed , 271 S.W.3d 698, 727 (Tex. Crim. App. 2008). In most circumstances, we defer to the trial judge's findings of fact and conclusions of law because the trial judge is in the best position to assess the credibility of the witnesses. Id. Nevertheless, when our independent review of the record reveals circumstances that contradict or undermine the trial judge's findings and conclusions, we have exercised our authority to enter contrary findings and conclusions. See ids="8171101" index="24" url="https://cite.case.law/sw3d/271/698/#p727">id. ; see also Ex parte Flores , 387 S.W.3d 626, 635 (Tex. Crim. App. 2012) ("Because the habeas judge's findings do not resolve the disputed fact issues, this Court must exercise its role as the ultimate finder of fact."). We have also remanded such cases to allow a trial judge to make additional findings or take other action in light of new evidence or legal authority. See, e.g., Ex parte Barnaby , 475 S.W.3d 316, 320-21 (Tex. Crim. App. 2015) ; Ex parte Butler , 416 S.W.3d 863, 864 (Tex. Crim. App. 2012).
In this case, our independent review of the record indicates that Judge Bryan presided over applicant's evidentiary hearing and issued findings of fact and conclusions of law at a point in time when he lacked the authority to do so. Therefore, we exercise our authority to disregard Judge Bryan's unauthorized findings and conclusions and remand this habeas proceeding to Judge Towslee to complete his assignment and enter findings of fact and conclusions of law.
CONCLUSION
Because Judge Underwood has not issued a written order rescinding Judge Towslee's assignment, Judge Towslee retains judicial authority to preside over applicant's habeas proceedings. We, therefore, remand this habeas case to its position immediately following Judge Towslee's assignment to the case, so that he can complete his assignment. Judge Towslee shall proceed with fact-finding pursuant to the procedures set out in Article 11.071 regarding applicant's claims listed in the order designating issues, which Judge Bryan signed before his recusal. Judge Towslee should also address any other pending motions and otherwise preside over the habeas proceedings consistent with the requirements of Article 11.071 and Judge Underwood's assignment order. If Judge Towslee is unable to complete this assignment, he shall refer the case to Judge Underwood so that a new judge can be assigned consistent with this opinion, the procedures set out in Rules 18a and 18b, the Texas Government Code, and any other applicable laws.
The trial court shall resolve the issues raised and the clerk shall return to this Court within 180 days of the date of this opinion a supplemental record containing transcripts of any hearings held and any additional documents produced or admitted in the case, including the trial court's findings of fact and conclusions of law. Any *158 extensions of this time period shall be obtained from this Court.

All references to articles refer to the Texas Code of Criminal Procedure unless otherwise stated.

In relevant part, this Court's order requested briefing on the following three questions:
1. In the absence of any subsequent written order signed by Judge Underwood, did Judge Bryan have judicial authority to sign and execute an order reinstating himself on applicant's habeas case and, if he did have such authority, what was the legal basis for that authority?
2. What is the meaning of the term "good cause" in the context presented? Did Judge Bryan's reinstatement order show "good cause" for him executing the order, rather than Judge Towslee or Presiding Judge Underwood? Can "good cause" as stated in Tex. R. Civ. P. 18a(f)(2) justify a recused judge removing his assigned replacement judge and reinstating himself to take all further actions in a case?
3. If Judge Bryan lacked the authority to reinstate himself as judge presiding over the instant habeas case, and his action cannot be justified by "good cause" as provided in Tex. R. Civ. P. 18a(f)(2), are his rulings while presiding over the evidentiary hearing, other orders he executed in this case after his recusal, and his order adopting findings of fact [ ] and conclusions of law "void and of no effect"?

Applicant, who is now represented by different attorneys than those who litigated his habeas hearing, has also filed objections to portions of Judge Bryan's findings of fact and conclusions of law. Applicant argues that his previous habeas attorneys made "mistakes in the proposed findings of fact and conclusions of law" which were "replicated" in Judge Bryan's findings of fact and conclusions of law. Applicant contends that there was no strategic rationale for his previous habeas attorneys to have narrowed the scope of the relief they requested to only the punishment phase on certain claims.

Texas Code of Criminal Procedure Chapter 30 contains provisions setting out procedures governing the disqualification of district judges and justices of the peace. See arts. 30.01, 30.02, 30.07, 30.08.

All subsequent references to rules refer to the Texas Rules of Civil Procedure unless otherwise stated.

The record suggests that Judge Bryan recused himself under Rule 18b(b)(1) because he had made a $1,000 contribution to Esparza's judicial campaign. See Rule 18b(b)(1) ("A judge must recuse in any proceeding in which ... the judge's impartiality might reasonably be questioned."). However, the record before us also supports Bryan's recusal under Rule 18b(b)(4). Esparza and Carter became material witnesses in the writ proceedings due to applicant's allegations of ineffective assistance of trial counsel. Judge Bryan stated that Esparza had worked for him for six years, presumably in the practice of law. He also stated that he had tried several high profile cases with Carter. Pursuant to Rule 18b(b)(4), "[a] judge must recuse in any proceeding in which ... the judge or a lawyer with whom the judge previously practiced law has been a material witness concerning the proceeding."

We do not mean to imply that Judge Towslee had any authority to sign an order rescinding Judge Bryan's recusal order and reinstating Bryan as the judge presiding in applicant's case. Cf. Rule 18a(g)(4).

Although Section 24.002 does not expressly authorize interim or ancillary orders in voluntary recusal proceedings, we note that Rule 18a(g) authorizes ancillary orders in recusal proceedings "unless and until" the Legislature passes a statute abrogating or limiting this rule. See Tex. Gov't Code § 22.004(a), (b) (providing that the Texas Supreme Court has "full rulemaking power in civil actions," and rules of procedure adopted by the Texas Supreme Court "remain in effect unless and until disapproved by the legislature").

Judge Underwood's assignment order ("assignment # 24920") provided that Judge Towslee's "assignment shall continue as may be necessary for [Judge Towslee] to dispose of any accumulated business ... or until terminated by the Presiding Judge. " (Emphasis added).