**Affirmed in part; Reversed in part and Opinion Filed February 11, 2022**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-21-00157-CV

**MICHAEL A. RUFF, Appellant**
**V.**
**SUZANN RUFF, Appellee**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-17273**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Myers

Michael A. Ruff appeals the trial court's order denying his motion under the

Texas Citizens Participation Act (TCPA) to dismiss Suzann Ruff's claims. *See* TEX.

CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011.[1]  Mike[2] brings twelve issues on appeal contending:  (1–3) the regional presiding judge lacked authority to issue certain orders; (4–8) the trial court erred by denying Mike's motion to dismiss; (9) the trial court erred by finding Mike's motion to dismiss was frivolous; and (10-12) the trial court erred by finding the motion to dismiss frivolous and filed solely for delay and awarding attorney's fees to Suzann.  We reverse the trial court's award of appellate attorney's fees and remand that issue to the trial court for further proceedings, and we otherwise affirm the trial court's order denying the motion to dismiss.

## BACKGROUND

This appeal is the latest in the long-running litigation among members of the Ruff family concerning management of the family finances.[3]

---

[1] The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date.  Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687.  Because the underlying lawsuit in this appeal was filed December 18, 2017, the law in effect before September 1, 2019 applies.  See Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, §§ 1–3, 5, 2013 Tex. Gen. Laws 2499–2500; see also Clayton Mountain Dev., LLC v. Ruff, No. 11-20-00114-CV, 2021 WL 3413644, at *1 n.3 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op.) (suit by Suzann against Mike and his business entities concerning the constructive trust imposed by the arbitration award; original petition was filed before September 1, 2019, but motion to dismiss was in response to Suzann's seventh amended petition filed after September 1, 2019; court of appeals held the 2019 amendments did not apply).  All citations to the TCPA are to the version before the 2019 amendments took effect.

[2] The parties refer to themselves in the briefs as "Mike" and "Suzann," and the earlier judicial opinions refer to them in that manner.  For consistency, we also refer to them by these names.

[3] For more information on the history of the litigation, see Ruff v. Ruff, 05-18-00326-CV, 2020 WL 4592794 (Tex. App.—Dallas Aug. 11, 2020, pet. denied) (mem. op.).

Suzann sued her son, Mike, in probate court, alleging he mismanaged and converted to his own accounts most of the fortune built by Suzann's deceased husband. The case proceeded to arbitration. On December 7, 2017, the arbitration panel issued its award, finding in Suzann's favor that Mike breached fiduciary duties, committed fraud, misapplied fiduciary property, converted assets, was unjustly enriched, failed to provide an accounting, and was negligent. The arbitration panel awarded Suzann judgment of $49 million against Mike and imposed a constructive trust on any entity Mike formed with monies or property misappropriated from and originating with Suzann. An appendix to the arbitration award listed many entities subject to the order of constructive trust. On April 10, 2018, the probate court confirmed the award, and it became the final judgment in that court. This Court affirmed the probate court's judgment. *See Ruff v. Ruff*, 05-18-00326-CV, 2020 WL 4592794 (Tex. App.—Dallas Aug. 11, 2020, pet. denied) (mem. op.).

One of the entities on which the probate court judgment imposed a constructive trust was Tavistock Group LLC. On February 12, 2010, Tavistock purchased a house for Mike's wife, Jennifer, to live in on Watson Avenue in Dallas. The settlement statement for the purchase of the house showed Tavistock paid over $2 million for the house.

Suzann filed this suit on December 18, 2017, alleging that pursuant to the arbitration award, she owned Tavistock and any property obtained with her funds.

–3–

She sought a declaratory judgment and prayed for judgment "vesting and quieting title in her of any interest Mike has in Tavistock Group LLC and any other property he obtained using her funds, including" the Watson Avenue house. Mike filed his original answer on January 22, 2018. Suzann filed the seventh amended petition on October 30, 2020. This petition did not seek judgment quieting title but, like the earlier petitions, sought declaratory judgment vesting in her the interests in Tavistock, including the Watson Avenue house.

On December 8, 2020, Mike filed a motion to dismiss under the TCPA. Mike alleged the seventh amended petition was "in response to Mike's communications made in connection with his desire to protect his wife and children" from his brother, Matthew, a convicted felon and registered sex offender, and "relates directly to Mike's communications about the health and safety of his family." He also alleged the seventh amended petition was in response to his exercise of the right to petition and exercise of the right of association. He also alleged Suzann's claims "fail" and that he had affirmative defenses to Suzann's claims, including the statute of limitations, res judicata, and collateral estoppel.

On January 11, 2021, Suzann filed a response to Mike's TCPA motion to dismiss. Suzann argued that Mike's motion to dismiss was untimely as it was filed more than sixty days after Mike filed his answer to the original petition and that the claims in the seventh amended petition were not in response to any communications by Mike that were protected under the TCPA. Suzann also asserted that Mike's

–4–

motion to dismiss was frivolous and filed solely for purposes of delay, and she requested the trial court award her attorney's fees.

The trial court held a hearing on the TCPA motion to dismiss on January 19, 2021. The trial court had thirty days—until February 18, 2021—to rule on the motion or the motion would be denied by operation of law. *See* CIV. PRAC. §§ 27.005(a), 27.008. On February 2, 2021, Mike filed a motion to recuse the trial judge, the Honorable Staci Williams. The next day, February 3, 2021, Judge Williams signed an order voluntarily recusing herself from the case. Judge Williams stated in the order that she believed herself to be qualified to preside over the case, but she found that the interests of judicial economy dictated that she recuse herself from the case. She asked the regional presiding judge, the Honorable Ray Wheless, to assign another judge to preside over the case and, "[s]o that justice may continue to be served, the Presiding Judge is also asked to extend all deadlines, pursuant to the Texas Supreme Court's Emergency Rules." The following day, February 4, 2021, Judge Wheless signed an order extending the deadline for the trial court to rule on the TCPA motion to dismiss to April 1, 2021, "as ancillary relief to the recusal, and as provided for by the Supreme Court's Thirty-Third Emergency Order Regarding the Covid-19 State of Disaster."[4]

---

[4] The relevant portion of the supreme court's Thirty-third Emergency Order Regarding the COVID-19 State of Disaster, effective from January 14, 2021 to April 1, 2021, stated:

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—

The next day, February 5, 2021, Judge Wheless transferred the case to the 116th District Court, the Honorable Tonya Parker, presiding.

On February 12, 2021, Judge Parker held a status conference with the parties to decide how to proceed on the motion to dismiss. All parties, including Mike, agreed to Judge Parker "deciding the pending motion by submission" without holding a hearing in order to conserve the resources of the parties. However, when Judge Parker told the parties she would not contact Judge Williams or her staff to obtain a transcription of the hearing on the motion to dismiss, Mike objected to not having a hearing on the motion before Judge Parker. After further discussion, Judge Parker told the parties her staff would be in touch to schedule the hearing. No hearing was held before Judge Parker on the motion to dismiss, and the docket sheet shows a hearing set for March 29, 2021, on the motion was cancelled.

On March 9, 2021, Mike filed a notice of appeal from the denial by operation of law of his motion to dismiss.

On April 1, 2021, Judge Parker signed an order denying Mike's TCPA motion to dismiss, finding the motion to dismiss was frivolous and was filed solely for

---

without a participant's consent except as provided in paragraph (b), modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than April 1, 2020.

Thirty-third Emergency Order Regarding the COVID-19 State of Disaster, 629 S.W.3d 179 (Tex. 2021) (mem). The provisions of paragraph (b), which concern proceedings under Title 5 of the Family Code, do not apply to this case. *See id.*

–6–

purposes of delay, and ordering that Suzann recover her reasonable and necessary attorney's fees in the trial court and on appeal.

On April 6, 2021, Mike amended his notice of appeal to include appeal of Judge Parker's April 1, 2021 order.

## JUDGE WHELESS'S ORDER

In his first, second, and third issues, Mike contends Judge Wheless did not have authority to extend the time for the trial court to rule on the motion to dismiss from February 18 to April 1, 2021. Mike argues that Judge Wheless, as a regional presiding judge who was not assigned to hear the case, had no jurisdiction to extend the deadline. Mike also argues he was denied due process if Judge Parker was not allowed to hold a hearing. We disagree.

Judge Williams voluntarily recused herself from this case. Section 24.002 of the Texas Government Code, which addresses voluntary recusals, provides that when a district court judge voluntarily recuses, "the judge shall enter a recusal order, request the presiding judge of that administrative judicial region to assign another judge to sit, and take no further action in the case except for good cause stated in the order in which the action is taken." TEX. GOV'T CODE § 24.002. Texas Rule of Civil Procedure 18a(g)(4), which sets forth the duties of the regional presiding judge in the recusal and disqualification of judges, provides that "[t]he regional presiding judge or judge assigned to decide the motion may issue interim or ancillary orders in the pending case as justice may require." TEX. R. CIV. P. 18a(g)(4). Mike argues

–7–

that Rule 18a(g) applies only to involuntary recusals where the case is assigned to the regional presiding judge to decide the motion to recuse. Mike argues that because Judge Williams voluntarily recused, Rule 18a(g)(4) does not apply, and Judge Wheless had no authority to issue the order extending the deadline for the trial court to rule on the TCPA motion to dismiss.

The court of criminal appeals, however, has stated that the regional presiding judge has authority to make interim or ancillary orders when a judge voluntarily recuses:

> Although Section 24.002 does not expressly authorize interim or ancillary orders in voluntary recusal proceedings, we note that Rule 18a(g) authorizes ancillary orders in recusal proceedings "unless and until" the Legislature passes a statute abrogating or limiting this rule.

*Ex parte Thuesen*, 546 S.W.3d 145, 154 n.8 (Tex. Crim. App. 2017). Thus, according to the court of criminal appeals, the presiding judge's authority under Rule 18a(g)(4) to make interim or ancillary orders extends to voluntary recusal proceedings.

Judge Wheless's order extending the deadline for ruling on the TCPA motion to dismiss qualifies as an administrative "interim or ancillary" order. An interim order is "[a] temporary court decree that takes effect until something else occurs." *Interim order*, BLACK'S LAW DICTIONARY (8th ed. 2004); *see also Interim order*, Black's Law Dictionary Free Online Legal Dictionary 2nd Ed., https://thelawdictionary.org/interim-order/ ("a term that means applies to a temporary edict from a court such as a temporary injunction."). Judge Wheless's

–8–

order provided no relief for any party on the motion to dismiss. It neither granted nor denied the motion to dismiss but provided docket management by extending the time for the trial court to rule on the motion that might otherwise have been denied by operation of law due to the delays inherent in transferring the case to another court and that court deciding the motion. Thus, it was administrative and interim because it was "[a] temporary court decree that takes effect until something else occurs," either the trial court's ruling or the end of the period to rule on the motion on April 1, 2021, whichever came first.

Mike argues that Judge Wheless's authority was limited by article V of the constitution and that "the constitutional limitations imposed on presiding administrative judges preclude him from extending deadlines or acting outside of his constitutionally defined duties." Mike, however, does not specify what provision of article V limits the authority of a presiding administrative judge.

Mike also asserts that an automatic stay was imposed when he filed his notice of appeal on March 9, 2021. *See* CIV. PRAC. § 51.014(b). Mike argues the automatic stay stripped Judge Parker of jurisdiction to sign the April 1, 2021 order denying the motion to dismiss and imposing sanctions against him for filing a frivolous motion to dismiss. We disagree. Judge Wheless properly extended the time for Judge Parker to rule on the motion to dismiss to April 1, 2021. Therefore, Mike's notice of appeal filed March 9, 2021, was premature because the period for ruling on the motion to dismiss, as extended by J. Wheless under the supreme court's emergency

–9–

order, had not expired and Judge Parker had not yet ruled on the motion. A premature notice of appeal is "deemed filed on the day of, but after, the event that begins the period for perfecting the appeal." TEX. R. APP. P. 27.1(a). The event that began the period for perfecting the appeal was Judge Parker's April 1, 2021 order. Thus, we treat Mike's March 9, 2021 notice of appeal as having been filed on April 1, 2021, after Judge Parker signed the order denying the motion to dismiss, finding Mike's motion to dismiss frivolous, and ordering him to pay attorney's fees. We conclude Mike's filing of a notice of appeal on March 9, 2021, did not create an automatic stay under section 51.014(b) on March 9, 2021, and the trial court had jurisdiction to sign the April 1, 2021 order.

Mike also contends he was denied due process if Judge Parker was not allowed to hold a hearing. The TCPA provides that a hearing must be held within 60 days, 90 days, or 120 days of service of the motion to dismiss, depending on the court's docket conditions and whether discovery was allowed. Judge Williams held a hearing on Mike's TCPA motion to dismiss on January 19, 2021, which was forty-two days after service of the motion to dismiss. At the status conference on February 12, 2021, Judge Parker stated she would decide the case by submission without holding another hearing to conserve the parties' resources. At first, all parties agreed to this plan. Judge Parker stated she would not communicate with Judge Williams or her chambers to obtain the reporter's record for the hearing because of allegations in Mike's motion to recuse Judge Williams. Mike then told Judge Parker he wanted

to have a hearing before her because "the record, the pleadings themselves are voluminous and so oral argument might help refine and point the Court to the most pertinent things relating to the motion to dismiss, the response and then the reply that were filed." Judge Parker said her staff would let the parties know when the hearing would be. The docket sheet shows that on March 29, 2021, a hearing on the motion to dismiss was canceled.

Mike argues he was denied due process because, although Judge Wheless's order extended the time for a ruling on the motion to dismiss, the order did not extend the time for holding the hearing on the motion to dismiss before Judge Parker. However, Mike had a hearing before Judge Williams. The record does not show that Mike made any attempt to provide the record of that hearing to Judge Parker. Nor does the record show why the March 29, 2021 hearing was canceled.

The TCPA provides for one hearing. It does not provide for a second hearing if the trial judge recuses and the case is assigned to a different judge. Instead, the Act ties the time for the trial court to rule on the motion to "the hearing." CIV. PRAC. § 27.005(a) ("The court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing . . . ."). Allowing multiple hearings in this situation would disrupt the system of efficient resolution of the motion to dismiss. Also, the supreme court's emergency order allowed courts to extend deadlines, including deadlines for hearings, but it did not require them to hold hearings where there was no preexisting right to a hearing.

–11–

Mike has not shown that he was entitled to a hearing before Judge Parker when he had a hearing before Judge Williams. Mike also does not explain how the denial of a hearing before Judge Parker probably resulted in the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a) (error not reversible unless it probably caused the rendition of an improper judgment).

We conclude Judge Wheless, as regional presiding judge, had authority under Rule 18a(g)(4) to make administrative interim and ancillary orders, the supreme court's Thirty-Third Emergency Order Regarding the COVID-19 State of Disaster gave authority to extend deadlines, and Judge Wheless's order was an administrative interim or ancillary order extending the deadline for the court to rule on the TCPA motion to dismiss as authorized by the Emergency Order. Mike has not shown he was deprived of due process by not having a hearing before Judge Parker or that any violation of his right to due process was reversible error.

We overrule Mike's first, second, and third issues.

## DENIAL OF MOTION TO DISMISS

In his fourth through eighth issues, Mike contends the trial court erred by denying his motion to dismiss under the TCPA. Mike's fourth issue contends he proved Suzann's claims are based on Mike's exercise of the right of free speech, the right of association, and the right to petition. His fifth issue contends his motion to dismiss was timely because Suzann sought new declaratory relief in the seventh amended petition, which restarted the sixty-day deadline for Mike to file his motion

–12–

to dismiss. Mike's sixth issue contends that Suzann failed to present clear and specific evidence of her claims. Mike's seventh issue contends Suzann's claims are barred by res judicata, and his eighth issue contends Suzann's declaratory judgment action fails. We conclude Mike's motion to dismiss was untimely and that the seventh amended petition did not restart the time for Mike to file a TCPA motion to dismiss.

### Standard of Review

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). At the time Suzann filed her original petition, section 27.005(b) of the TCPA provided:

> Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association.

Civ. Prac. § 27.005(b). Thus, the TCPA permits a defendant to move for dismissal of a legal action that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a).

In deciding whether a legal action should be dismissed under the TCPA, the trial court "shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a); *Goldberg v. EMR (USA Holdings) Inc.*, 594 S.W.3d 818, 824 (Tex. App.—Dallas

–13–

2020, pet. denied). The trial court's application of the TCPA is a matter of statutory interpretation that we review de novo. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *Goldberg*, 594 S.W.3d at 833 (citing *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018)). In conducting that review, we consider, in the light most favorable to the nonmovant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

### Timeliness of the TCPA Motion to Dismiss

We must first determine whether Mike filed the motion to dismiss timely.

Suzann filed her original petition on December 18, 2017. A motion to dismiss under the TCPA "must be filed not later than the 60th day after the date of service of the legal action." The record does not show when Mike was served, but it does show he filed an answer to the original petition on January 22, 2018. Using that date, Mike's motion to dismiss was due no later than March 23, 2018. Mike filed the motion to dismiss almost three years later on December 8, 2020.

Mike argues that the sixty-day period for filing a motion to dismiss was restarted when Suzann filed her seventh amended petition on October 30, 2020. The supreme court has stated that when the plaintiff files an amended or supplemental pleading that:

(1) adds a new party or parties,

–14–

(2) alleges new essential facts to support previously asserted claims, or

(3) asserts new legal claims or theories involving different elements than the claims or theories previously asserted,

then the new pleading asserts a new legal action and triggers a new sixty-day period as to those new parties, facts, or claims. *Montelongo v. Abrea*, 622 S.W.3d 290, 293–94 (Tex. 2021). Suzann's seventh amended petition did not add a new party or parties. Suzann filed her sixth amended petition more than sixty days before Mike filed his motion to dismiss. Therefore, the motion to dismiss only applies to "new essential facts" or "new legal claims or theories" alleged in the seventh amended petition that were not alleged in the sixth amended petition.

Mike argues that Suzann's earlier petitions sought relief based on a suit to quiet title while in the seventh amended petition, "[s]he abandoned the quiet title claim and now seeks declaratory relief interpreting the [probate court judgment]. The seventh petition is a new legal action seeking new declaratory relief." Mike may raise this argument only if Suzann's earlier petitions did not allege the declaratory judgment action.

Suzann's sixth amended petition alleged:

59. Pursuant to §§ 37.001 through 37.011 of the Texas Civil Practice and Remedies Code [the Uniform Declaratory Judgments Act], Plaintiff requests that the Court declare that the title to Tavistock Group LLC, JMV Holdings LLC, and any other property obtained using Suzy's funds vests in Plaintiff and to quiet title.

The sixth amended petition's prayer included a request for:

The purported transfer of legal title to the property at [address of Watson Avenue house] from Tavistock Group LLC to Jennifer Ruff be declared unenforceable and fraudulent, and therefore is voided and set aside . . . .

In the seventh amended petition, the equivalent paragraph to paragraph 59 in the sixth amended petition provided:

57. Pursuant to §§ 37.001 through 37.011 of the Texas Civil Practice and Remedies Code, Plaintiff requests that the Court declare that the title to Tavistock Group LLC, and any other property obtained using Suzy's funds vests in Plaintiff, pursuant to the Final Judgement [sic] of Probate Court No. 1.

The part of the prayer from the sixth amended petition quoted above is repeated verbatim in the seventh amended petition.

Paragraph 57 of the seventh amended petition is identical to paragraph 59 of the sixth amended petition except that it deletes "JMV Holdings LLC" and "and to quiet title" and adds the phrase "pursuant to the Final Judgement of Probate Court No. 1." Applying standard "redlining" comparing the sixth and seventh amended petitions, the paragraph reads:

59. 57. Pursuant to §§ 37.001 through 37.011 of the Texas Civil Practice and Remedies Code, Plaintiff requests that the Court declare that the title to Tavistock Group LLC, JMV Holdings LLC, and any other property obtained using Suzy's funds vests in Plaintiff and to quiet title, pursuant to the Final Judgement of Probate Court No. 1.

It is this last addition, "pursuant to the Final Judgement of Probate Court No. 1," Mike argues, that transforms the lawsuit from one to quiet title into one seeking declaratory judgment based on the probate court's judgment confirming the arbitration award. Mike asserts in his reply brief, "Here, Appellee's claim has

–16–

changed. Appellee now seeks declaratory relief 'pursuant to the Final Judgment . . . .'" We disagree.

In the sixth amended petition, the allegation that the declaration was sought "pursuant to the Final Judgement" was implied. That it was implied is shown by the next paragraph, identical in both petitions except for the removal of the references to JMV LLC, which we present with standard "redlining" showing the changes from the sixth amended petition to the seventh amended petition:

> 60.58. Defendants have taken the position before this Court, and other courts, that the Probate Court's Final Judgment does not impose a constructive trust over ~~JMV and~~ Tavistock, despite the Probate Court finding that Mike still retains property belonging to Suzy. This action seeks, *inter alia*, to enforce that Judgment as written. This action seeks to enforce that Judgment against Mike and all persons or entities in privity with him, including, but not limited to, Jennifer~~,~~ <u>and</u> Tavistock~~,~~ ~~and JMV~~ on the principles of *res judicata* and collateral estoppel because Mike and his privies tried by consent all issues about his creating and funding with his [sic] Suzy's assets, the entities described in the Final Judgment, which included ~~JMV~~ <u>Jennifer</u> and Tavistock.

Thus, in the sixth amended petition, Suzann sought to enforce the probate court's judgment. The pleading of the declaratory judgment cause of action in the seventh amended petition stated expressly what was implied in the sixth amended petition, that the request for a declaration that title to Tavistock vested in Suzann was pursuant to the probate court judgment.

The request for declaratory relief declaring that title to Tavistock vested in Suzann did not first appear in the sixth amended petition. It was alleged in the original petition filed on December 18, 2017, and in every amendment to the petition

that is in the record on appeal. The original petition, filed before the probate court's confirmation of the arbitration award, based the claim to Tavistock on the "Final Award from the American Arbitration Association, which is attached as Exhibit 'A.'" Suzann also alleged in the original petition that, "In accordance with Exhibit A, Ms. Ruff owns any interest in Tavistock Group LLC . . . ." This is essentially the same claim re-alleged repeatedly over two years in the subsequent amendments to the petition.

We conclude that Mike has not identified on appeal any allegations in the seventh amended petition that added a new party, alleged new essential facts to support previously asserted claims, or asserted new legal claims or theories involving different elements than the claims or theories previously asserted. *See Montelongo*, 622 S.W.3d 293–94. Therefore, the sixty-day period for filing the motion to dismiss did not restart when Suzann filed the seventh amended petition.

We conclude Mike's motion to dismiss was not timely, and the trial court did not err by denying Mike's motion to dismiss. We overrule Mike's fifth issue. We need not address Mike's fourth, sixth, seventh, and eighth issues.

### SANCTIONS

In his ninth issue, Mike contends the trial court erred by finding Mike's motion to dismiss was frivolous and filed solely for purposes of delay. In his tenth, eleventh, and twelfth issues, Mike contends Suzann failed to prove her entitlement to the attorney's fees the trial court awarded.

–18–

**Frivolous Motion**

The TCPA provides, "If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party." CIV. PRAC. § 72.009(b). The order denying Mike's motion to dismiss:

> ORDERED, ADJUDGED, and DECREED that the above-referenced motion is frivolous and was filed solely for purposes of delay and that Plaintiff recover her reasonable and necessary attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(b) in the amount of $6,438.00 before this Court, $20,000.00 in the event of an appeal to the Court of Appeals, $10,000.00 in the event a petition for review is filed, $15,000.00 in the event the Supreme Court requests full briefing, and $8,000.00 in the event the Supreme Court grants oral argument.

We review the trial court's decision to award attorney's fees under the TCPA for an abuse of discretion. *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 242 (Tex. App.—Eastland 2019, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without regard to guiding principles. *Id.* at 242–43; *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

"Frivolous" is not defined in the Act; however, the common understanding of the word "frivolous" "contemplates that a claim or motion will be considered frivolous if it has no basis in law or fact and lacks a legal basis or legal merit." *Keane Frac, LP v. SP Silica Sales, LLC*, 608 S.W.3d 416, 433 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Pinghua Lei v. Natural Polymer Int'l Corp.*, 578 S.W.3d 706, 717 (Tex. App.—Dallas 2019, no pet.).

–19–

Mike argues his motion to dismiss was not frivolous because it was filed timely and "has legal basis and merit." As discussed above, Mike's motion was not filed timely, that is, within sixty days of service of the legal action but was filed almost three years later. The trial court could conclude that Mike's attempt to explain his tardy filing as being based on new allegations in the seventh amended petition was in bad faith and had no legal basis.

We conclude Mike has not shown the trial court abused its discretion by finding his motion to dismiss was frivolous and filed solely for delay. We overrule Mike's ninth issue.

**Attorney's Fees**

The trial court awarded Suzann attorney's fees of $6,438 for proceedings in the trial court, $20,000 in the event of an appeal to the court of appeals, $10,000 if a petition for review is filed, $15,000 if the supreme court requests full briefing, and $8,000 if the supreme court grants oral argument.

In his tenth issue, Mike contends the trial court erred by awarding attorney's fees to Suzann under section 27.009(b) because she had a contingency fee agreement with her attorney. In his eleventh issue, Mike contends the trial court erred by awarding attorney's fees for Suzann's attorney's services in the trial court. In the twelfth issue, Mike contends the trial court erred by awarding Suzann appellate attorney's fees because she failed to prove they were reasonable and necessary.

Texas uses the "lodestar method," which is essentially a "short hand version" of the *Arthur Andersen* factors, to determine reasonable and necessary attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019); *see Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Under the lodestar method, the factfinder must first determine the reasonable hours spent by counsel and the reasonable hourly rate for counsel's work. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The factfinder then multiplies the number of hours that counsel worked on the case by the applicable rate to determine the base fee or lodestar. *Id.* The base fee is presumed to reflect the reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 499. The factfinder may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* at 500–01.

It is the fee-claimant's burden to provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Id.* at 498. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed the services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each attorney performing the services. *Id.*

"General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* at 501. Generalities about tasks performed provide insufficient information for the factfinder to meaningfully review whether the tasks and hours

–21–

were reasonable and necessary. *El Apple I*, 370 S.W.3d at 764. While contemporaneous billing records are not required, *Rohrmoos Venture*, 578 S.W.3d at 502, there must be some evidence to inform the trial court of the time spent on specific tasks to enable the factfinder to meaningfully review the requested fees. *Long v. Griffin*, 442 S.W.3d 253, 253, 255 (Tex. 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam) (reversing and remanding to redetermine attorney's fees when attorney testified to the time expended and the hourly rate but failed to provide evidence of the time devoted to specific tasks).

In support of her request for attorney's fees, Suzann filed the declaration of Mark Donheiser. Donheiser stated that he was one of the attorneys representing Suzann and that he was primarily responsible for preparing Suzann's response to Mike's motion to dismiss. According to Donheiser, although other attorneys participated in preparing Suzann's response to the motion to dismiss, Suzann requested only that she be awarded fees for the time spent by him. Donheiser detailed the tasks that he performed in responding to Mike's motion to dismiss, the date on which he performed each task, and the number of hours that he spent on each task.

Donheiser stated that, in total, he spent 14.8 hours on Suzann's response to Mike's motion to dismiss and that his hourly rate was $435. According to Donheiser, his hourly rate was "low" for an attorney of his experience in the North

Texas area. Donheiser stated that he had reviewed the factors to be considered as to the reasonableness of attorney's fees, and based on those factors, it was his opinion that the amount of $6,438 in attorney's fees was reasonable and that the work reflected thereby was necessary. Donheiser also opined about the attorney's fees that would be reasonable and necessary in the event of an appeal. Donheiser recognized he had a contingent fee agreement with Suzann but opined that "the likelihood of recover[ing] money from Mike is minimal because Mike has hidden the misappropriated assets." Donheiser's declaration is sufficient to demonstrate that Donheiser had personal knowledge of who performed each task, the date that each task was performed, the amount of time spent on each task, and the hourly billing rate for each task.

Relying on *MacFarland v. Le-Vel Brands LLC*, No. 05-17-00968-CV, 2018 WL 2213913, at *7 (Tex. App.—Dallas May 15, 2018, no pet.) (mem. op.), Mike asserts that Suzann is not entitled to recover attorney's fees because she has a contingent fee contract with her attorneys. *MacFarland* stands for the proposition that the trial court did not abuse its discretion when it failed to award to a successful TCPA movant attorney's fees under section 27.009(a)(1) based on a contingent fee agreement. *Id.* at *6–7. However, the TCPA specifically allows a successful movant to recover only those attorney's fees "incurred." CIV. PRAC. § 27.009(a)(1).

In contrast, section 27.009(b) gives the trial court discretion to award a TCPA nonmovant "reasonable attorney's fees" when a motion to dismiss is frivolous. *See*

*id.* § 27.009(b). Section 27.009(b) does not require that these attorney's fees be "incurred" by the nonmovant. *See id.* Therefore, the fact that Suzann has a contingent fee agreement with her attorneys was merely one factor that the trial court could consider when it determined what constituted a reasonable and necessary fee. *See Rohrmoos Venture*, 578 S.W.3d at 498 ("[B]ecause fee-shifting awards are to be reasonable and necessary for successfully prosecuting or defending against a claim, reasonableness and necessity are not dependent solely on the contractual fee arrangement between the prevailing party and its attorney."); *Arthur Andersen*, 945 S.W.2d at 818 (noting that "whether the fee is fixed or contingent on results obtained" is one of the considerations in the base lodestar calculation).

We conclude Mike has not shown the trial court abused its discretion in awarding Suzann $6,148 attorney's fees for counsel's time spent on Mike's frivolous motion to dismiss. *See Ruff v. Ruff*, No. 11-20-00122-CV, 2021 WL 388707, at *9–10 (Tex. App.—Eastland Feb. 4, 2021, pet. denied) (mem. op.).

Mike also argues the evidence was insufficient to support the award of appellate attorney's fees. To recover fees for contingent appellate services, a party must "provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020).

Donheiser's declaration stated the following concerning appellate attorney's fees:

> In the event of an appeal (which is inevitable), reasonable and necessary attorneys' fees and expenses before the Court of Appeals would be $20,000. In the event a petition for review is filed, reasonable and necessary attorneys' fees and expenses would be $10,000. In the event full briefing is requested by the Supreme Court, reasonable and necessary attorneys' fees and expenses would be $15,000. In the event the Supreme Court grants argument, reasonable and necessary attorneys' fees and expenses would be $8,000.

The declaration states that Donheiser's hourly rate is $435 per hour and states the "reasonable and necessary fees and expenses" for the different stages of the appellate process. But Donheiser's declaration does not "provide opinion testimony about the *services* [he] reasonably believes will be necessary to defend the appeal." *Id.* (emphasis added); *see also KBIDC Invs., LLC v. Zuru Toys, Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *23–24 (Tex. App.—Dallas Oct. 9, 2020, pet. pending) (mem. op.) (applying *Yowell*). We conclude the evidence is insufficient to support the award of appellate attorney's fees.

We sustain Mike's twelfth issue, and we overrule Mike's tenth and eleventh issues.

## CONCLUSION

We reverse the trial court's award of attorney's fees for services in the court of appeals and the supreme court, and we otherwise affirm the trial court's order denying Mike's TCPA motion to dismiss. We remand the case to the trial court for determination of Suzann's attorney's fees for services in the court of appeals and the supreme court and for further proceedings.

210157f.p05

/Lana Myers//

LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL A. RUFF, Appellant

No. 05-21-00157-CV     V.

SUZANN RUFF, Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-17-17273. Opinion delivered by Justice Myers. Justices Molberg and Garcia participating.

In accordance with this Court's opinion of this date, the April 1, 2021 order of the trial court denying appellant Michael A. Ruff's motion to dismiss is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order awarding appellate attorney's fees and **REMAND** the issue of appellate attorney's fees to the trial court for further proceedings. In all other respects, the trial court's order is **AFFIRMED**.

It is **ORDERED** that appellee Suzann Ruff recover her costs of this appeal from appellant Michael A. Ruff.

Judgment entered this 11th day of February, 2022.